# H. C. O'Boyle & Co. v. Cameron, Commissioner of Banking.

*Dealers—Registration—Securities Act of June 14, 1923.*

1. The Securities Act of June 14, 1923, P. L. 779, can neither be extended nor curtailed by interpretation of the Secretary of Banking or the courts. As the law is written, so it must be enforced and obeyed.

2. A firm which proposes to deal in securities by taking orders from its customers and forwarding them to a brokerage firm in New York City for execution is entitled to registration under the Securities Act of 1923 as a dealer, although the New York firm is not registered in Pennsylvania, will carry its account with the applicant and not with the applicant's individual customers and will not assume any liability to them, and the securities and cash deposited with the applicant by its individual customers, under a hypothecation agreement with them, will be deposited by it with the New York firm as margin for the account.

Appeal from the decision of the Secretary of Banking. C. P. Dauphin Co., Commonwealth Docket, 1924, No. 35.

*Myers & McNees,* for plaintiff.

*George W. Woodruff,* Attorney-General, and *J. W. Brown,* Deputy Attorney-General, for defendant.

WICKERSHAM, J., May 5, 1924.—It appears from the petition of the plaintiff company that it filed with the Bureau of Securities of the Department of Banking, on March 17, 1924, an application for registration as a dealer in securities under the Act of June 14, 1923, P. L. 779, known as the Securities Act; that on April 7, 1924, the petitioner received a notice from the Department of Banking, dated April 5, 1924, notifying it that its application for registration had been refused because its proposed plan of business was unfair, unjust and inequitable. From the decision of the Bureau of Securities of the Department of Banking the plaintiff company filed the appeal which is now pending.

The Commissioner of Banking did not file an answer, but in lieu thereof a stipulation and facts agreed upon, signed by the Deputy Attorney-General and by counsel for the plaintiff, was filed. The stipulation provides that the following questions shall be submitted to the Court of Common Pleas of Dauphin County in the nature of a case stated, upon an agreed statement of facts, for the disposition of the court. The question to be submitted is substantially as follows:

"Under the Act of June 14, 1923, P. L. 779, is it legal to refuse to register an applicant whose proposed plan of business is to accept orders for the purchase or sale of securities, which orders will be executed through a New York Stock Exchange House not registered as a dealer in securities in Pennsylvania. The New York Stock Exchange House will carry its account with this applicant and not with the individual customers, and will not assume any liability

to such individual customer. The securities and cash deposited with the applicant by his customers are deposited by the applicant as margin for the applicant's account with the New York Stock Exchange House."

The following facts have been agreed upon by counsel for the Secretary of Banking and the plaintiff, as follows:

1. H. C. O'Boyle, trading as H. C. O'Boyle & Company, was a dealer in securities, with his principal office in Elmira, New York, and with a branch office in Williamsport, Pennsylvania. He executed orders for customers by forwarding them to, and buying or selling through, D'Aguero & Company, a member of the Consolidated Exchange of New York. If the customer of H. C. O'Boyle & Company purchased from it on margin, then H. C. O'Boyle & Company purchased from the New York House on margin, using as collateral cash or securities deposited with H. C. O'Boyle & Company as collateral. The securities bought or sold by the New York Consolidated Exchange House and the moneys and securities deposited as margin therefor were carried in the name of H. C. O'Boyle & Company and not in the individual name of the customer of H. C. O'Boyle & Company.

2. D'Aguero & Company filed a petition of voluntary bankruptcy on March 2, 1922, and at the time of such filing it had moneys and securities credited to the account of H. C. O'Boyle & Company, but which were the securities of the customers of H. C. O'Boyle & Company. Such customers were not able to make claim against the assets of the bankrupt estate of D'Aguero & Company, and it was subsequently revealed that the securities and moneys held by D'Aguero & Company in the trading account of H. C. O'Boyle & Company, and belonging to the customers of H. C. O'Boyle & Company, had been fraudulently converted to their own use by D'Aguero & Company. H. C. O'Boyle & Company did immediately file its claim for the total amount of its account, but nothing was recovered on any of the claims filed against the bankrupt estate. The claim filed by H. C. O'Boyle & Company was equal in amount to the total of the claims of the customers of H. C. O'Boyle & Company.

3. Subsequent to the bankruptcy of the Consolidated Exchange House, H. C. O'Boyle, trading as H. C. O'Boyle & Company, was compelled to go into bankruptcy, and in the schedule of assets filed the securities and moneys belonging to his customers are listed as a claim filed by H. C. O'Boyle & Company against the bankrupt estate of the Consolidated Exchange House. Up to this time, a period of over two years, nothing has been received by any of the customers of H. C. O'Boyle & Company from the bankrupt estate of H. C. O'Boyle & Company, nor has H. C. O'Boyle & Company received anything from the bankrupt estate of the Consolidated Exchange House.

4. The new firm of H. C. O'Boyle & Company is a copartnership, composed of Gertrude H. O'Boyle, Jackson G. Wolfe and Harry C. O'Boyle. It filed with the Bureau of Securities of the Department of Banking, on March 17, 1924, an application for registration as a dealer in securities under the Act of June 14, 1923, P. L. 779, known as "The Securities Act." This application was refused on the ground that the proposed plan of business was unfair, unjust and inequitable.

5. In this partnership the said Jackson G. Wolfe is an active partner on a salary and has an interest of $1500 in it. The balance of the financial interest in the partnership is held by Gertrude H. O'Boyle, wife of H. C. O'Boyle. The capital investment of this partnership, limited to $16,500, is not now impaired.

6. H. C. O'Boyle & Company proposes to execute orders for its customers by forwarding them to the firm of Marks & Graham, which firm is a member

of the New York Stock Exchange, but is not a registered dealer in securities in Pennsylvania, and to H. G. Einstein & Company, which firm is a member of the New York Curb, but is not a registered dealer in securities in Penn-,sylvania; and that it will derive its income by charging such customers as it may choose a service and wire charge in addition to the regular charges by Marks & Graham and Einstein & Company. H. C. O'Boyle & Company must be paid for its services in this way because of the regulations of the New York Stock Exchange, which prohibit its members from rebating any part of their commissions to others.

7. The equities of all customers of H. C. O'Boyle & Company are carried on the books of the company in the name of each individual customer, and when they are deposited with Marks & Graham or Einstein & Company, as the case may be, they are carried in one account as equities of H. C. O'Boyle & Company on the books of the New York House. The method of carrying these accounts is similar to the method used by other brokerage houses not members of any exchange.

8. H. C. O'Boyle & Company maintains its margin with Marks & Graham and Einstein & Company with the securities and moneys placed with H. C. O'Boyle & Company to secure the margins of the customer who made sales or purchases of H. C. O'Boyle & Company. Neither Marks & Graham nor Einstein & Company carry either securities or cash for the account of the individual customers of H. C. O'Boyle & Company, and the individuals trading with H. C. O'Boyle & Company have no dealings with Marks & Graham or Einstein & Company and do not know what part of their cash or securities is being held by Marks & Graham or Einstein & Company. All of the customers who have bought or sold on margin have signed the following hypothecation slip and delivered it to H. C. O'Boyle & Company:

"H. C. O'Boyle & Company:

"Gentlemen: I hereby consent that all securities that may be purchased by H. C. O'Boyle & Company for my account and risk which are not fully paid for by me, and any securities that are now or may hereafter be deposited by me with them as collateral to secure any advances made by them for my account, may be loaned by H. C. O'Boyle & Company or may be pledged by them either separately or together with other securities, either for the sum due thereon to said H. C. O'Boyle & Company or for any greater sum, all without further notice to me.　　　　　　　　　　　Very truly yours."

The "repute" of the plaintiff company in this case is not in question. It is claimed by the learned Deputy Attorney-General that the arrangement set forth in the facts agreed upon, if permitted, renders entirely ineffective the Securities Act of Pennsylvania. The Securities Act aims to place all responsibility on the dealer and not on the dealer's authorized agent. But in the case of Harry C. O'Boyle & Company the responsible dealer, the persons and firms who actually hold the collateral securities and moneys of the Pennsylvania customers of Harry C. & O'Boyle & Company, are holding themselves exempt from the registration and regulation of the Pennsylvania Securities Act. That no examination of the books of Harry C. O'Boyle & Company will disclose any facts that will enable the Bureau of Securities to regulate its business. To regulate the real dealers in this case, under the Securities Act, it will be necessary to bring the books of the New York dealers carrying the accounts of Harry C. O'Boyle & Company within the jurisdiction of this court. Such a plan of business, which makes it possible for dealers outside this State and not subject to registration and regulation under the Securities Act, to do

business in this State through the agency of another dealer, who is dealer in name only and does not actually execute his customers' orders nor maintain his financial responsibility towards these customers, but merelly acts as a forwarding agency for the dealers outside the State and shifts all the actual financial responsibility to these other dealers outside the State, is held by the Secretary of Banking to be unfair, unjust and inequitable.

The contention of the plaintiff company, briefly stated, is that it desires to build up a personal business in Pennsylvania and not to act as agents for any New York Exchange House. Marks & Graham have no objection to being registered as a dealer in Pennsylvania, but H. C. O'Boyle & Company has been informed that if Marks & Graham should so register, then H. C. O'Boyle & Company must register as an agent or salesman and not as a dealer. If this procedure were followed, no one in Pennsylvania who buys and sells on the New York Stock Exchange could go into business for himself, but every one must act as agent for some New York Exchange member. That the issue in this case is not the registration of Marks & Graham; they are willing to register as dealers in Pennsylvania, provided that H. C. O'Boyle & Company may also be registered as a dealer. The question here is whether or not H. C. O'Boyle & Company or any other company may be registered as dealers in Pennsylvania and not agents, if they are not members of the New York Stock Exchange; that a Pennsylvania dealer may go to New York and underwrite any scheme he sees fit, come back to Pennsylvania and sell the stock; but the present applicant seems to be discriminated against because he proposes to buy and sell only such stocks as are listed and have passed the careful scrutiny of the exchanges. In other words, the plaintiff company in this case seeks to be registered in order that it may build up a business of its own; it does not desire to be registered merely as an agent of any firm of brokers in New York.

The only powers which the Bureau of Securities of the Banking Department have are such as are conferred upon the said Secretary of Banking by the Securities Act. We think this is wise and salutary legislation, enacted for the protection of the public desiring to purchase and sell securities, and, if wisely administered, will carry out the design of the legislature, which appears in section 19 of the act to be the "protection of the public." This act is the chart, and the only chart, which the Secretary of Banking may use as his guide. The provisions of the act can neither be extended nor curtailed by interpretation of the Secretary of Banking or the courts; as the law is written, so it must be enforced and obeyed; we cannot write into the law that which the legislature has not ordained and enacted. The legislature has said that in reaching a conclusion with respect to the interpretation of this act, our decisions "shall consult only the rights of the plaintiff and the protection of the public." This is a positive direction to us which we, in passing upon the official acts of the Secretary of Banking, must follow and obey. In doing so, we are unable to reach the conclusion urged upon us by counsel for the defendant.

The plaintiff company desires to be registered as "a dealer in securities;" it does not apply for registration as "a salesman." We must look, therefore, for the definition controlling this case, not in paragraph *(d)* of section 2 of said Securities Act, but in paragraph *(c)* of said section, which provides as follows: "The term 'dealer' shall include every person or company, other than a salesman, who engages for profit in this State, either for all or part of his time, directly or through an agent, in selling, offering for sale or delivery, or soliciting subscriptions to, or orders for, or undertaking to dispose of, or to

H. C. O'Boyle & Co. *v.* Cameron, Commissioner of Banking.

invite offers for or inquiries about, or deal in any manner in any security or securities within this State."

It appears from paragraph 5 of the facts agreed upon that the capital of the plaintiff partnership is $16,500, which is not now impaired. In paragraph 6 it is stated that the plaintiffs' proposed method of doing business is to execute orders for its customers by forwarding them to the firm of Marks & Graham, which firm is a member of the New York Stock Exchange, but is not a registered dealer in securities in Pennsylvania; or to H. G. Einstein & Company, which firm is a member of the New York Curb, but which firm is not a registered dealer in securities in Pennsylvania. Plaintiff company will derive its income by charging such customers as it may choose a service and wire charge in addition to the regular charge by Marks & Graham and Einstein & Company. The plaintiff company must be paid for its services in this way because the regulations of the New York Stock Exchange prohibit its members from rebating any part of their commissions to others. It further appears from paragraph 7 of the statement of facts that the equities of all customers of the plaintiff are carried on the books of the company in the name of each individual customer, and when they are deposited with Marks & Graham or Einstein & Company, they are carried in one account as equities of the plaintiff company on the books of the New York House. "The method of carrying these accounts is similar to the method used by other brokerage houses not members of any exchange." It is further provided that the plaintiff company maintains its margin with Marks & Graham and Einstein & Company with the securities and moneys placed with the plaintiff company to secure the margins of the customer who made sales or purchases of the plaintiff company. Neither Marks & Graham nor Einstein & Company carry either securities or cash for the account of the individual customers of the plaintiff company, and the individuals trading with the plaintiff company have no dealings with Marks & Graham or Einstein & Company, and do not know what part of their cash or securities is being held by Marks & Graham or Einstein & Company. All customers of the plaintiff company sign hypothecation agreements.

We find nothing in the statement of facts which brings the plaintiff company within the terms "salesman," under paragraph *(d)* of section 2 of the Securities Act, for which the defendant contends. "The term 'salesman' shall, except as provided in section 4, include every person or company employed or appointed or authorized by a dealer to sell, offer for sale or delivery, or solicit subscriptions to, or orders for, or dispose of inquiries about, or deal in any manner in securities within this State, whether by direct act or through sub-agents."

It does not appear from the statement of facts that the plaintiff company proposes to act as agent for either Marks & Graham or Einstein & Company; on the contrary, it appears that the plaintiff company proposes to buy and sell securities registered with the New York Stock Exchange or the New York Curb, and that its purchases and sales will be executed by the aforementioned brokers, and this is the usual method of transacting such business. We think to sustain the contention of the defendant we would have to find that the plaintiff company sold only the securities which the New York brokers had for sale, as appeared by the facts in N. R. Bagley Co. *v.* Cameron, 27 Dauphin Co. Reps. 1; 4 D. & C. 81, but this does not appear to be the fact in the case at bar. The plaintiff company proposes to sell any securities registered by the New York Stock Exchange or the New York Curb, and only uses the brokers as a medium through which said business can be conducted.

Counsel for defendant directs our attention to the first paragraphs of the facts agreed upon, which discloses the former and proposed plan of doing business of the plaintiff company and which refer to the failure of H. C. O'Boyle, formerly trading as H. C. O'Boyle & Company. He contends that such a plan of business which makes it possible for dealers outside this State and not subject to registration and regulation under the Securities Act to do business in this State through the agency of another dealer, who is a dealer in name only, and does not actually execute his customers' orders, but merely acts as a forwarding agency for the dealers outside the State and shifts all the actual financial responsibility to those other dealers outside the State, is unfair, unjust and inequitable. This does not, in our opinion, fairly state the case. It appears from the evidence that the applicant in this case has some financial responsibility. It does not appear that said plaintiff company is a dealer in name only and not a dealer in fact. No complaint is made by the customers of the former company respecting its unfortunate financial reverses; on the contrary, many responsible banks and trust companies in the vicinity in which the plaintiff company has done business heretofore and in which it proposes in the future to do business have written the Department of Securities recommending the plaintiff company and stating, in a general way, plaintiff's method of doing business has always been satisfactory. If the legislature had deemed such action necessary, it could have enacted that dealers in securities in Pennsylvania must either be members of one of the New York Stock Exchanges or that the brokers who were members of one of the New York Stock Exchanges must register to do business in Pennsylvania, and that Pennsylvania brokers must act as their salesmen and agents and not as independent dealers. We do not find such provision in the Securities Act, and, therefore, we must decline to write anything into the act which has not been placed therein by the legislature.

We reach the conclusion, therefore, after carefully considering the stipulation and statement of facts agreed upon in this case, that the plaintiff company is a dealer and not a salesman; that it is entitled to be registered as a dealer and not as a salesman, and that the decision of the defendant, the Secretary of Banking of the Commonwealth of Pennsylvania, in refusing to register said plaintiff company, must be reversed. The Secretary of Banking is hereby directed to register the plaintiff company as a dealer in securities in compliance with the Securities Act of 1923.

From Sidney E. Friedman, Harrisburg, Pa.